IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>LAMONT ALFONZO WARD, JR. (01),<br><br>    Defendant. | Case Nos. 13-cr-40066-DDC,<br>14-cr-40139-DDC |

**MEMORANDUM AND ORDER**

This case comes before the Court on two motions to suppress filed by defendant Lamont Ward, Jr. Mr. Ward filed a motion to suppress in the first iteration of this prosecution, Case. No. 13-40066 (Doc. 27). He also joined the suppression motions filed by the defendants in a related case, *United States v. Banks* (Doc. 37 in Case No. 13-40060).

In *Banks*, this Court granted the defendants' motions to suppress the government's wiretap evidence in part because investigators had intercepted certain calls outside the jurisdiction of the state court judge who issued the wiretap orders. *See* Doc. 580 in Case No. 13-40060. Investigators used the content of some of these now-suppressed phone calls in the affidavit supporting their application for search warrants. Relying in part on subsequently suppressed wiretap evidence, Judge David Platt of Kansas' Eighth Judicial District issued a warrant authorizing a search of Mr. Ward's residence. Officers executed the warrant and seized evidence the government likely will use against Mr. Ward at trial.

In response to the order in *Banks*, Mr. Ward supplemented his motion to suppress (Doc. 46). His supplemental motion argues that the Court must suppress the evidence seized at his residence because, when one excludes the improperly-obtained wiretap evidence, the affidavit

1

supporting the warrant application fails to establish probable cause. The government has filed a response opposing Mr. Ward's motion (Doc. 50). The Court conducted a hearing on Mr. Ward's motion on April 17, 2015. After considering the facts and arguments presented by the parties, the Court denies Mr. Ward's motion for the reasons explained below.

### A. Procedural Background

The government has indicted Mr. Ward for the same offenses—possession of cocaine with intent to distribute, felon in possession of a firearm, and possession of a firearm in furtherance of drug trafficking—in two separate cases. *See* Doc. 1 in Case No. 14-40139; Doc. 3 in Case No. 13-40066. The government filed the First Indictment on May 29, 2013.

Following an August 22, 2014 hearing in *Banks*, this Court issued an order ruling that it would suppress certain wiretap evidence unless the government could produce evidence showing that the tapped phones were within Kansas' Eighth Judicial District when agents intercepted the calls. *See* Doc. 517 in Case No. 13-40060. Some of the evidence affected by the Court's suppression order is relevant to Mr. Ward's case. *See* Doc. 10 in Case No. 13-40066. In response to the Court's order, the government asserted that it needed time to process evidence about the phone's locations. At a status conference conducted on September 15, 2014, the government informed Mr. Ward that it intended to dismiss the First Indictment and refile a second indictment as soon as practical. The Court had yet to decide Mr. Ward's first motion to suppress when the government voluntarily dismissed the First Indictment. The grand jury returned the Second Indictment on November 12, 2014. Doc. 1 in Case No. 14-40139.

On January 12, 2015, Mr. Ward's previous counsel filed a motion to withdraw (Doc. 27), asserting that her relationship with Mr. Ward had deteriorated and thus precluded effective representation. The Court conducted a hearing and advised Mr. Ward that if it appointed new

2

counsel, it would postpone the trial so that his new attorney could adequately for trial. Advised of this consequence, Mr. Ward stood on his demand for new counsel, so the Court granted the motion (Doc. 32). Mr. Ward's new attorney informed the Court that he wished to file additional pretrial motions. The Court allowed it. This new round of motions includes the supplemental motion to suppress now before the Court. In it, Mr. Ward reasserts his original motion to suppress from the first case and also asserts additional arguments based on the Court's suppression ruling in *Banks*. The Court addresses each motion, below.

### B. Framework for Resolving Mr. Ward's Motion

Both the federal wiretap statute, commonly called "Title III," and Kansas' wiretap statute, which largely tracks its federal counterpart, require the Court to suppress unlawfully intercepted wire and oral communications and also "any evidence derived therefrom." 18 U.S.C. § 2515; K.S.A. § 22-2517. To apply the "evidence derived therefrom" component of this rule, the Court looks to the analogous and better developed Fourth Amendment case law for guidance.[1]  "[I]n a derivative evidence claim, the defendant must make a threshold showing that the challenged evidence is tainted" by unconstitutional conduct. *United States v. DeLuca*, 269 F.3d 1128, 1135 (10th Cir. 2001) (citing *Alderman v. United States*, 394 U.S. 165, 183 (1969)). Next, the defendant must show a "factual nexus" between the primary violation and the

---

[1] The Court's reliance on this aspect of the Fourth Amendment's exclusionary rule is appropriate for two reasons. First, the "fruit of the poisonous tree" doctrine, established in *Wong Sun v. United States*, 371 U.S. 471, 503 (1963), preceded Title III by 5 years. Congressional reports about Title III reflect Congress' intent to incorporate then-existing search and seizure law into the statute's suppression remedy. *See* S. Rep No. 90-1097 (1968) (indicating intent not to "press the scope of the suppression role beyond present search and seizure law"). Second, the statute's suppression remedy codifies the principles in *Wong Sun* by requiring courts to suppress improperly intercepted communications and evidence "derived therefrom." 18 U.S.C. § 2515; K.S.A. § 22-2517.

derivative evidence. *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000). This test demands more than a showing that the derivative evidence would not have come to light "but for" the primary violation. *Id.* (citing *Wong Sun*, 371 U.S. at 488). Instead "the ultimate 'fruit of the poisonous tree' inquiry asks whether the challenged evidence has been come at by exploitation of the primary violation or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (citing *Wong Sun*, 371 U.S. at 488).

Mr. Ward's motion asks the Court to decide the validity of a search warrant that relied, in part, on suppressed evidence to establish probable cause. In this context, the Court must invalidate the warrant "if [the suppressed] information was critical to establishing probable cause." *United States v. Sims*, 428 F.3d 945, 954 (10th Cir. 2005). "If, however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid." *Id.* To resolve this motion, the Court will determine, first, what portions of the affidavit derive from suppressed evidence. Next, it will construct a "reconstituted affidavit" consisting only of the evidence untainted by the wiretap violation. And last, the Court will consider whether probable cause supported a search of the Springhill Drive residence based on the information in the reconstituted affidavit.

### C. The Reconstituted Affidavit

The parties agree that only seven paragraphs in the search warrant affidavit contain information about Mr. Ward. They are: ¶¶ 259, 335, 339, 429, 498, 706, and 909. Doc. 395-1. Among other information, these paragraphs identify six calls and two texts messages between Mr. Ward and others that agents intercepted.

Mr. Ward argues that four of these calls or text messages—identified in ¶¶ 259, 429 and 706—are inadmissible because the government lacks the cell-site location information associated

4

with them. Indeed, the government admits that Penlink, its interception software, was not working properly when agents intercepted these four communications. It thus failed to log the cell-site information associated with those calls. As a result, Mr. Ward asserts that they cannot survive the Court's suppression order, and the Court should not consider them to determine whether probable cause existed.

The government agrees that ¶¶ 259 and 706 are inadmissible.[2] Though Mr. Ward does not challenge it, the government also agreed to redact ¶ 339 from the affidavit voluntarily. Both parties agree that ¶¶ 335, 486, 498, 909 survive the Court's suppression order, but they do dispute whether of ¶ 429 should survive.

Paragraph 429 of the affidavit submitted as support for the search warrant describes a series of phone calls occurring on March 23, 2013, at approximately 10:30 p.m. Call #6465 is a call Mr. Ward placed to Albert Banks. Mr. Ward asked Mr. Banks if he was "back yet," and indicated that wanted to get some drugs from Mr. Banks. In response, Mr. Banks asked Mr. Ward if he wanted a "B z" (which, the affidavit asserts is slang for an eighth-ounce of crack cocaine). Mr. Banks told Mr. Ward that he would put the crack "on the bench" (meaning a bench scale). Mr. Ward then asked Mr. Banks for a "half one," and, moments later, Mr. Banks asked him for a "bench" because his was in Ogden, Kansas. Mr. Ward advised Mr. Banks that he did not care what the cocaine looked like, and just to make it "a little bit over." Mr. Banks also made a comment that he "gets down here" and "snow done covered the shit up" (referring to snow on the ground covering an item that Detective Babcock believed to be drugs). Detective Babcock's affidavit understood this conversation to be consistent with a drug transaction.

---

[2] The Court's suppression order has not suppressed any text messages intercepted under Judge Platt's orders, even those intercepted outside the Eighth Judicial District. Nevertheless, the Court will honor the parties' stipulation and exclude this evidence from the reconstituted affidavit.

The government argues that the content of this phone call and the calls occurring immediately before and after it establish that Mr. Ward was in Junction City and, hence, inside the Eighth Judicial District when these communications took place. Mr. Ward and Mr. Banks were discussing a drug delivery to Mr. Ward, who lives in Junction City. These facts, along with the statements about Mr. Banks getting "down here," led the agents to believe that Mr. Banks also was in Junction City—and thus within the Eighth Judicial District—at the time of the call. Also, the government contends that the two calls bracketing this conversation corroborate their claim about Mr. Ward's location in Junction City. In call #6486, a call that occurred less than five minutes before the conversation described in ¶ 429, Mr. Banks told Sylvester Jackson that he was outside of Mr. Jackson's house, which agents asserted also was located in Junction City. In call #6494, less than one minute after the conversation between Mr. Banks and Mr. Ward, Mr. Banks indicated that he was at Tiffany Young's residence, also located in Junction City.

The government's theory about the content of the two phone calls "bracketing," *i.e.*, the call preceding and the call following, those described in ¶ 429, if supported, might establish admissibility of the calls. But the government has failed to present sufficient evidence to support its theory. The content of the phone call described ¶ 429 is not sufficient to establish that either party to the conversation was located inside the Eighth Judicial District when the call occurred. And the Court has no documentation about the two calls the government asserts bracket the calls described in ¶ 429. Detective Babcock's testimony at the suppression hearing is the only evidence about those calls or their contents. The questions asked by the government's counsel elicited only vague recollections about the existence and contents of those calls. Whether ¶ 429 survives the Court's suppression order is a fact-driven inquiry. Because the government has

failed to carry its burden to establish the admissibility of these phone calls, the Court will not include ¶ 429 in the reconstituted affidavit.

The Court therefore will consider only the following four paragraphs to determine whether probable cause supported the issuance of the search warrant for the Springhill Drive residence: ¶¶ 335, 486, 498, 909.[3]  These paragraphs are set forth as they appear in the original affidavit below:

> On 03-21-13 at approximately hours, 785-375-6704 ("AB") called an unknown number (call #5394) because Penlink was down and it didn't record phone numbers. I recognized the voice as Lamont Ward "Nook." They talked about getting some "Tookie" (Tookie is a street name for synthetic cannabanoids or potpourri). "AB" told him he will come and get him. "AB" called him back as I recognized his voice once again as "Nook". He told "AB" he was on 11th St. Surveillance members were in the area and "AB" drove to the apartment complex of 810 W. 8th St. apparently where "Nook" got into "AB's" vehicle. "AB" traveled to the Ramada Inn, 1133 S. Washington St. where they went to room 104. Surveillance members observed both "AB" and "Nook" go to room 104. *Id.* at ¶ 335.

> On 03-25-13 at approximately 1400 hours, 785-375-6704 ("AB") called 785-761-6481, Lamont Ward aka "Nook" (call #7314). Lamont told "AB" he got pulled over by the Police. He told "AB" that the white dude he had with him got arrested on a warrant. "AB" then asked what's up with the "tookie" (synthetic cannabanoid). "AB" said he had what Lamont wanted so he needed to get over to his house because "Whack" is going to burn out (leave). Surveillance was set up on this. They observed Lamont drive his white vehicle down "AB's" alley and then exit a short time later. "AB" resides at 235 E. 3'd St. #4, Junction City, Kansas. *Id.* at ¶ 486.

> On 03-25-13 at approximately 2306 hours, 785-375-6704 ("AB") called 785-761-6481, Lamont Ward aka "Nook" (call #7487). "AB" told Lamont that he is here. Lamont asked "AB" where he was at. "AB" told Lamont he was at home. "AB" told Lamont to meet him over near 12th and Washington St. near the Comer Club at Renee's house. Lamont called "AB" back and "AB" told Lamont to come on over to the house. (meaning "AB's house). *Id.* at ¶ 498.

---

[3] Detective Babcock's assertion that Mr. Ward resides with his mother at 1409 Springhill Drive also appeared in paragraphs containing suppressed phone calls. The content of these paragraphs derived from suppressed calls is excluded from the reconstituted affidavit. But the Court does not exclude the information about Mr. Ward's residence from those paragraphs because it was not derived from an intercepted phone call. Instead, Detective Babcock's testimony at the suppression hearing established that he obtained this address from Mr. Ward's parole documents.

> On 04-13-13 at approximately 0954 hours, 785-717-9771 ("AB") called 785-717-7975, Norma Mohammed (call #93). "AB" asked Norma if she wanted him to call her and she told him yes. He told her to meet him at the Shop Quik at 6th and Madison St., Junction City, Kansas. Surveillance members were in the area and they observed an off white Chrysler 300 pull into the parking lot and "AB" go to that car. I watched the video and it shows Lamont Ward and "AB" walking out of the store. *Id.* at ¶ 909.

In the sections that follow, the Court addresses Mr. Ward's challenges to the search warrant based on the information contained in these four paragraphs.

### D. Sufficiency of the Reconstituted Affidavit

Mr. Ward argues that the Court should suppress the evidence obtained during the search of his residence for three reasons: (1) the information about Mr. Ward is stale; (2) the affidavit fails to establish a nexus between the suspected illegal activity and the Springhill Drive residence; and (3) the Judge Platt abandoned his role as a neutral and detached magistrate when he authorized the search warrant. The Court addresses each argument in turn.

#### 1. Probable Cause

"Probable cause 'requires only a probability or substantial chance of criminal activity,'" rather than "an actual showing of such activity.'" *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009) (quoting *New York v. P.J. Video, Inc.*, 475 U.S. 868, 877-78 (1986)). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). "When a court is required to determine the sufficiency of an affidavit previously offered in support of a request for a search warrant, it should view the affidavit in a commonsense, nontechnical manner, with deference to be given in marginal cases to the prior determination of probable cause by the issuing authority." *United States v. Barrera*, 843 F.2d 1576, 1581 (10th Cir. 1988). When reviewing a determination about probable cause, courts

should decide "'solely on the facts and circumstances presented in the affidavit.'" *Id.* (quoting *United States v. Rios*, 611 F.2d 1335, 1347 (10th Cir. 1979)).  But a court should uphold the issuing magistrate's determination so long as the magistrate had a "substantial basis" to find that the affidavit in support of the search warrant established probable cause.  *United States v. Nolan,* 199 F.3d 1180, 1182 (10th Cir. 1999) (citing *Gates,* 462 U.S. at 236).

### 2. Staleness

Mr. Ward argues that affidavit describes evidence of only one potential drug transaction, which occurred in late March 2013.  It thus relies upon information, he argues, that was too stale to support the issuance of a search warrant more than a month later.

"A search warrant may not issue if [it is] based upon information that has grown stale, *i.e.*, information that no longer supports an affidavit's underlying assertion that the item sought will be found in the area or location to be searched."  *United States v. Cantu*, 405 F.3d 1173, 1177 (10th Cir. 2005) (citing *United States v. Snow,* 919 F.2d 1458, 1459 (10th Cir. 1990)).  "While each case must, of course, be decided based upon its particular circumstances," the Tenth Circuit has identified four factors to guide a court's analysis whether information is stale:  (1) the continuity of the alleged criminal activity; (2) the time elapsed between the last events giving rise to probable cause and the issuance of the warrant; (3) the use of present or past tense in affidavits supporting a search warrant; and (4) the likelihood that the suspect will have moved the item sought.  *United States v. Myers*, 553 F. Supp. 98, 104 (D. Kan. 1982) (citations omitted).  "[T]imeliness and relevance cannot be judged solely by the days of the calendar."  *Cantu*, 405 F.3d at 1177 (citing *Snow*, 919 F.2d at 1459).  "When the circumstances suggest ongoing criminal activity, the passage of time recedes in importance."  *Id.* (citing *United States v.*

9

*Jardine*, 364 F.3d 1200, 1205 (10th Cir. 2004), *cert. granted*, *judgment vacated on other grounds*, 543 U.S. 1102 (2005)).

The Court disagrees with Mr. Ward's argument that the supporting affidavit relied solely on stale information. Officers executed the search warrant on 1409 Springhill Drive on May 8, 2013. The reconstituted affidavit describes evidence of drug transactions involving Mr. Ward or his association with drug traffickers observed on March 21, March 25, and April 13. In addition, the entirety of the affidavit describes an ongoing drug trafficking conspiracy. Mr. Ward conducted drug transactions and otherwise associated with members of the suspected ongoing conspiracy. Viewed in a "in a commonsense, nontechnical manner," *see Barrera*, 843 F.2d at 1581, the affidavit supports an inference that Mr. Ward had engaged in a pattern of ongoing criminal conduct. Viewing the affidavit as a whole, the Court concludes that Judge Platt had a substantial basis to conclude that the information contained in the affidavit was timely. It thus declines to invalidate the search based on staleness.

### 3. Factual Nexus

Next, Mr. Ward argues that the affidavit failed to establish the requisite nexus between his suspected crimes and the Springhill Drive residence that the warrant targeted for search. "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990) (citing *United States v. McCoy*, 781 F.2d 168, 172 (10th Cir. 1985)). As he must, Mr. Ward concedes that if investigators established probable cause to suspect he was engaged in drug trafficking, then they also established probable cause that he kept evidence of drug trafficking crimes at his residence. Doc. 27 at 7 in Case. No. 13-40066 (citing *United States v. Sanchez*, 555 F.3d 910, 914 (10th Cir. 2009) (observing that "it is merely common sense that a drug supplier will keep

evidence of his crimes at his home")).  Instead, Mr. Ward argues that the warrant failed the nexus requirement because the affidavit did not set forth any facts establishing that 1409 Springhill Drive was in fact his residence, aside from the conclusory assertion that he lived there.

The Tenth Circuit generally recognizes three kinds of nexus showings.  First, an affidavit establishes a "substantial nexus" if it sets forth sufficient facts describing the basis of the affiant's belief that incriminating evidence is present at the particular place to be searched, and not some place else.  *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (cited in *United States v. Barajas*, 710 F.3d 1102, 1111 (10th Cir.) *cert. denied*, 134 S. Ct. 230 (2013)).  In such cases, the affidavit meets the probable cause standard and the Court should uphold the search.  *See Barajas*, 710 F.3d at 1111.  In *United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two & 43/100 Dollars ($149,442.43)*, the Tenth Circuit concluded that an affidavit established a substantial nexus when it disclosed that a confidential informant drove an officer by the suspect's residence, identified it, and described occasions he had had witnessed the suspect maintain drugs there.  965 F.2d 868, 872 (10th Cir. 1992).

Next, an affidavit also may contain facts insufficient to establish a substantial nexus but sufficient enough to establish a "minimal nexus."  *Barajas*, 710 F.3d at 1111; *United States v. Gonzales*, 399 F.3d 1225, 1231 (10th Cir. 2005); *United States v. Roach*, 582 F.3d 1192, 1204 (10th Cir. 2009).  If an affidavit establishes only a minimal nexus, a reviewing court must conclude that the warrant was not supported by probable cause.  But such cases do not necessarily require a court to suppress the fruits of the search because an affidavit establishing a minimal nexus qualifies for the good-faith exception to the exclusionary rule.  For example, in *Roach*, the defendant sought to suppress evidence because the search warrant failed to establish a nexus between him and the residence searched.  582 F.3d at 1200.  The defendant's residence

was one of fifteen residences for which the application sought warrants. *Id.* at 1202. The supporting affidavit described just one connection between the defendant and his purported residence, a general statement that applied to all fifteen residences identified in the affidavit: "[O]fficers have verified that the individuals listed below live at the following addresses, through investigations, which included checking for utilities information, driver's license records, real estate records, Wichita Police Department records, tax records, social security records, U.S. Postal Service records, interviews and/or surveillance." *Id.*

The Tenth Circuit held that the affidavit failed the substantial nexus requirement because "[a] magistrate reading the statement would not, from the face of the affidavit, know which of the listed methods was used to verify that [this particular defendant] resided at [this address]." *Id.* at 1203. As a result, there "simply [was] not enough evidence on the face of the affidavit for a magistrate to conclude reasonably that the requisite nexus between [defendant] and [the residence] was present." *Id.* (citing *Gonzales*, 399 F.3d at 1228). Nevertheless, the Circuit declined to suppress the evidence recovered during the search. *Id.* at 1204. It held that the good-faith exception rescued the warrant because "the language of the affidavit indicates that officers [verified the defendant's residence] using at least one of a list of investigatory methods, any one of which would—assuming they were successful—provide a 'minimal nexus' connecting [defendant] to the address." *Id.*

The Circuit contrasted the "minimal nexus" showing in *Roach* with a third kind of nexus: a conclusory or "bare bones" nexus showing. *Id.* at 1204-05 (citing *United States v. Leon*, 468 U.S. 897, 923 (1984); *see also United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006)). "A bare bones affidavit is one that merely states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of

12

knowledge." *McPhearson*, 469 F.3d at 526 (quotation omitted) (cited in *Roach*, 582 F.3d at 1204-05). In *Gonzales*, the Tenth Circuit suppressed evidence recovered by a search warrant because the supporting affidavit established just a bare bones nexus between the suspected illegal activity and the defendant's residence. 399 F.3d at 1231. It noted that the Circuit's precedent generally permits a magistrate to rely on an officer's experience to establish that certain contraband likely is present at a suspect's residence. *Id*. The affidavit in *Gonzales* did not contain, however, "any facts establishing the residence belonged to or was otherwise linked to [defendant]." *Id.* The Court reasoned that the good faith exception should not apply because the factual basis connecting "the place to be searched with the defendant or the suspected criminal activity" was "wholly absent." *Id.* The executing officer's belief in the existence of probable cause was "entirely unreasonable," thereby precluding application of the good-faith exception. *Id.* (citing *Leon*, 468 U.S. at 923). For these reasons, the Circuit affirmed the district court's order suppressing the evidence recovered at the defendant's residence.

Our district reached a similar result in *United States v. Walker*, No. 13-10068-MLB, 2014 WL 4954620 (D. Kan. Oct. 1, 2014). In this case, the supporting affidavit described two facts purporting to link the defendant to the residence searched: (1) a conclusory statement that the defendant "lives at or has used" the targeted residence, and (2) a statement that "during this investigation officers began to notice vehicles driven by [the defendant] were staying at [the target residence]." *Id.* at *3. Judge Belot determined that reports asserting that the defendant had parked his car at the residence were stale because they were three years old. *Id.* at *4. Aside from this stale information, the only part of the affidavit linking the defendant to the residence searched was the conclusory assertion that the defendant lived there. *Id.* Judge Belot concluded that this statement not only failed to establish the requisite nexus required by the probable cause

13

standard, but it also failed to establish the minimal nexus required to qualify the warrant for the good-faith exception. *Id.* at *5 (citing *Gonzales*, 399 F.3d at 1231). Accordingly, he granted the defendant's motion to suppress the evidence. *Id.*

Here, the affidavit recites Detective Babcock's assertion that Mr. Ward resides with his mother at 1409 Springhill Drive at the end of ¶¶ 259, 429, and 706. Doc. 395-1. At the hearing, Detective Babcock testified Mr. Ward provided this address to his parole officer. Indeed, Mr. Ward's Community Corrections records indicate that he resides at 1409 Springhill Drive. Doc. 29-2 in Case No. 13-40066. The government argues that the Corrections records were "readily available to Judge Platt." Doc. 29 at 14 in Case No. 13-40066. While these records likely provided officers a credible basis to believe Mr. Ward resided at this particular residence, the government presented no evidence that Judge Platt accessed these records or otherwise knew of their contents. And when a court reviews the issuance of search warrant, the Court must determine probable cause "'solely on the facts and circumstances presented in the affidavit.'" *Barrera*, 843 F.2d at 1581 (quoting *United States v. Rios*, 611 F.2d 1335, 1347 (10th Cir. 1979)).

Confining its review to those facts encompassed within the affidavit submitted to Judge Platt, the Court concludes that the affidavit failed to describe sufficiently the underlying facts supporting Detective Babcock's belief that Mr. Ward resides at 1409 Springhill Drive. Accordingly, Detective Babcock's affidavit failed to establish the "substantial nexus" required to support a probable cause finding. *See Barajas*, 710 F.3d at 1111; *Carpenter*, 360 F.3d at 594.

But the Court concludes that the affidavit established a minimal nexus between Mr. Ward's suspected drug activities and the Springhill Drive residence. The nexus presented by the affidavit falls somewhere between the one at issue in *Roach* (which listed generally the investigative techniques used to determine the suspects' residences) and the one at issue in

*Gonzalez* (which failed to describe any facts linking the defendant to the targeted residence). Here, the affidavit at least connects Mr. Ward with the Springhill Drive residence by asserting that his mother resides there and that he resides there with her. These assertions give additional context to Detective Babcock's belief that Mr. Ward was using the residence. Finally, Detective Babcock states generally that his experience and training in narcotics investigations led him to believe that drug traffickers often keep contraband and other evidence of their crimes at their residences.

The portions of the affidavit applicable to Mr. Ward do not provide a bounty of factual detail. But, using *Roach* as a guidepost, the affidavit contains enough facts to remove it from bare bones or conclusory category of affidavits that preclude the good-faith exception from applying. Because the affidavit established a minimal nexus between Mr. Ward's suspected drug activity and the Springhill Drive residence, the Court cannot conclude that it was "entirely unreasonable" for the executing officers to rely on Judge Platt's authorization of the warrant. *See Roach*, 582 F.3d at 1204. The good-faith exception thus applies here, and the Court declines to suppress the evidence seized at 1409 Springhill Drive on this basis.

### 4. Whether Judge Platt Abandoned his Neutral and Detached Role

Last, Mr. Ward argues that Detective Babcock designed the affidavit to make it so voluminous that it would overwhelm Judge Platt with information. Because of its sheer volume, Mr. Ward asserts, Judge Platt could not have acted as a "neutral and detached" magistrate when he authorized warrants for each of the 51 residences identified in the application.

No evidence supports this assertion. To the contrary, Detective Babcock identified the practical concerns that motivated him to seek all the warrants in one document (*e.g.*, given the tight-knit relationship between the members of this conspiracy, conducting the searches in a

15

piecemeal fashion would have alerted other suspects and risked the destruction of evidence).  As a result, Detective Babcock had to submit a single voluminous affidavit to support his request to search a large number of connected residences.

Mr. Ward also has not presented any evidence that Judge Platt was overwhelmed or otherwise failed to consider the affidavit carefully to determine whether individualized probable cause supported issuance of a search warrant for each residence identified in the affidavit.  Instead, Mr. Ward merely asserts that the size of the affidavit alone is a sufficient reason to invalidate the warrant.  The Court disagrees.  As Mr. Ward's arguments have established, a search warrant applicant is exposed to after-the-fact criticism no matter how the application is handled.  If the affidavit is fulsome, it "purposefully overwhelmed the reviewing judge."  If it omits some factual detail, it is attacked for "bare bones" and "conclusory" assertions.

Here, five days elapsed between Judge Platt's receipt of the affidavit and the issuance of the warrant, ample time for him to review the information presented in the affidavit carefully.  Also, the Court had considered and rejected Mr. Ward's more specific challenges to the validity of the warrant.  In the absence of any evidence suggesting that Judge Platt abandoned his neutral and detached role, the Court declines to invalidate the warrant based on Mr. Ward's mere speculation.  *See United States v. Wilson*, 899 F. Supp. 521, 528 (D. Kan. 1995) (holding that in the absence of any evidence that the issuing judge abandoned his neutral and detached role, "[the defendant's] allegations are nothing more than unsubstantiated surmise") *aff'd*, 96 F.3d 1454 (10th Cir. 1996).  The Court thus denies Mr. Ward's motion to suppress on this basis as well.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Lamont Ward, Jr.'s motions to suppress (Doc. 27 in Case No. 13-40066; Doc. 46 in Case No. 14-40139) are denied.

**IT IS SO ORDERED.**

**Dated this 30th day of April, 2015, at Topeka, Kansas**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
